**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MMIE, LLC,

Plaintiff,

v.

SYNECTICS MEDIA, INC., GREGORY
EVANS, MICHAEL McCLINTOCK,

Defendants.

Case No. 20-cv-3874

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff MMIE, LLC ("MMIE") alleges that Defendants Synectics Media, Inc.
("Synectics"), its founder and President Gregory Evans, and its contractor Michael
McClintock engaged in fraudulent inducement (Count I), fraud (Count II), conspiracy
(Count IV), and unjust enrichment (Count V). MMIE also alleges that Synectics and
Evans engaged in breach of contract (Count III). McClintock has filed a motion to
dismiss for lack of subject matter jurisdiction under 12(b)(1) in light of an arbitration
clause, and to dismiss for failure to state a claim under 12(b)(6). (Dkt. 22). Evans and
Synectics have filed a joint motion to dismiss under 12(b)(3) for improper venue based
on that arbitration clause, and under 12(b)(6) for failure to state a claim. (Dkt. 25).
For the reasons stated herein, McClintock's motion to dismiss for lack of subject
matter jurisdiction is converted to a 12(b)(3) motion to dismiss for improper venue
and, along with the remaining Defendants' 12(b)(3) motion, granted. The Court does
not reach the 12(b)(6) motions.

1

## I. Background

The following factual allegations are taken from the Complaint. (Dkt. 1). The Plaintiff, MMIE, was founded by Josh Simpson in early 2015. His intention was to hire web developers to build four websites: "Listly" (a consumer sales website similar to Craigslist.com), "Wexy" (an online auction website similar to eBay.com), "Carz" (a vehicle sales website similar to Autotrader.com), and "Jship" (a shipping website that would allow consumers to compare the prices of various long-distance carriers). In October of 2015 Simpson hired Synectics as the website developer for MMIE.com, the company's homepage.

On June 28, 2016, MMIE and Synectics executed a contract, "the June 2016 contract," (Dkt. 25, Ex. 1), providing that Synectics would build MMIE's consumer sales website, Listly.[1] While Synectics was developing this website, MMIE was able to view an off-line version of the website but did not have access to the underlying code.

MMIE was satisfied with this early version of Listly, and Evans represented to Simpson that Synectics could build MMIE's other websites: Carz, Wexy, and Jship.[2] While Listly was being developed Evans told MMIE "during numerous in-person meeting between in 2016 and of 2017" that Synectics had completed "several"

---

[1] MMIE argues that this contract is extrinsic evidence. (Dkt. 32 at 5). But when evaluating a Rule 12(b)(3) motion, the court "may examine facts outside the complaint." *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1094 (N.D. Ill. 2015). MMIE also argues that the June contract is not central to its claims, since it is only seeking to recover from the breach of the Wexy, Carz, and Jship contracts, not the Listly contract. But those latter contracts incorporate the terms of the June 2016 Listly contract by reference, as the Court discusses below.

[2] In the Complaint MMIE and Simpson are used interchangeably, as are Synectics and Evans.

development projects already, some "for Fortune 500 companies." (Dkt. 1, ¶ 31).

Evans also "led MMIE to believe that Synectics had a group of in-house software

developer employees" including Defendant McClintock. (*Id.*, ¶ 32).

On March 2, 2017, MMIE and Synectics contracted for the development of

Wexy and Carz websites, to be completed by July of 2017 ("the March 2017 contract"

Dkt. 1, Ex. 1 at 3). Before that contract had been fulfilled, on May 26, 2017, Synectics

and MMIE contracted to build the Jship website ("the May 2017 contract" Dkt. 1, Ex.

2). This website was scheduled to be completed by August or September of 2017.

MMIE made payments under these contracts through 2018, long after the expected

completion dates of the projects. In June of 2019 MMIE demanded that McClintock

turn over all of the code he had developed for these projects. McClintock replied that

he no longer worked with Synectics. In a phone call between Simpson and Evans in

July of 2019, MMIE again demanded that Synectics turn over all code developed

pursuant to their contracts. Evans told Simpson that Synectics had gone out of

business, that the project would not be completed, and that he would only turn over

the code if Simpson signed a waiver.[3] The code for Wexy, Carz, and Jship was

ultimately surrendered to MMIE. An independent audit found the code to be

defective.

## II.    Standard

When evaluating a Rule 12(b)(3) motion, the Court "takes all the allegations

in the complaint as true [. . .] and may examine facts outside the complaint." *Bahoor*

---

[3] The Complaint does not identify the claims or the person(s) this waiver would protect.

*v. Varonis Sys.*, Inc., 152 F. Supp. 3d 1091, 1094 (N.D. Ill. 2015); *see also, Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011) ("[w]hen ruling on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings.") (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)). The Court also construes "all facts" and draws "reasonable inferences" in favor of the Plaintiff. *Faulkenberg*, 637 F.3d at 806.

### III. Analysis

It is undisputed that the original contract, signed June 28, 2016, contains an arbitration clause while the contracts executed in March and May of 2017 do not. Defendants rely on the arbitration clause in the June contract to argue that venue is improper in this Court.[4] Federal law places arbitration clauses "on equal footing with other contracts," and "[w]hether a binding arbitration agreement exists is determined under principles of state contract law." *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015) (citing *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740–

---

[4] McClintock's motion seeks to "compel arbitration," (Dkt. 23 at 6) and is styled as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Neither is the proper vehicle. First, under § 4 of the FAA, a federal district court cannot compel arbitration outside the confines of its own district. *See Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009). Here, the clause in question calls for arbitration to take place in Michigan. (Dkt. 25, Ex. 1 at 10). Second, a Rule 12(b)(1) motion is improper under these circumstances, because "[a] motion to compel arbitration is about the proper forum, not the power of the Court." *Varma v. TCC Wireless, LLC*, 478 F. Supp. 3d 724, 727 (N.D. Ill. 2020); *see also Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (motions to compel arbitration outside of a federal court's jurisdiction "concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3), not Rule 12(b)(1)"). The Seventh Circuit has held that a Rule 12(b)(3) motion to dismiss for improper venue is the correct way to proceed. *Faulkenberg*, 637 F.3d at 808 (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606–07 (7th Cir. 2003)). The Court therefore converts McClintock's Rule 12(b)(1) motion into a Rule 12(b)(3) motion. *See Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1094 (N.D. Ill. 2015) (doing likewise).

42 (7th Cir. 2010)). The party opposing arbitration "bears the burden of demonstrating the arbitration agreement is unenforceable and the claims are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). Courts resolve any doubts concerning arbitrability in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). A Rule 12(b)(3) motion to dismiss for improper venue may be granted if there is "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The Court addresses the Defendants' arguments in favor of arbitration separately.

**A. Synectic and Evans' Motion**

The parties agree that there was a written agreement to arbitrate between Synectic and MMIE in the June 2016 contract, satisfying the first prong of the *Zurich* test. The provision states, in pertinent part, that: "[a]ny dispute arising under this Agreement will be subject to binding arbitration," and requires that the arbitration take place in Michigan. (Dkt. 25, Ex. 1 at 10). MMIE has refused to arbitrate, satisfying the third prong of this test. The question is whether the current dispute is within the scope of that arbitration clause.

*1. The March and May 2017 Agreements*

MMIE argues that its claims are only related to the March and May 2017 contracts and since neither of those contracts contain an arbitration clause, Defendants' motions should be denied. However, the 2017 contracts each provide that

"[t]he same terms and conditions from the existing MMIE Wexy site development contract will remain in effect." (Dkt. 1, Ex. 1 at 10; Ex. 2 at 10). Synectic and Evans argue in their motion to dismiss that this language incorporates the arbitration clause from the June 2016 contract by reference. MMIE counters that the March 2017 and May 2017 contracts are "vague with respect to the extent to which they are intended to incorporate provisions of the June, 2016, agreement" for two reasons.

First, MMIE says that the June 2016 contract concerned the development of *Listly* (the Craigslist.com analogue) not *Wexy* (the eBay.com analogue), and that the 2017 contracts only incorporate terms and conditions from a Wexy contact. (Dkt. 32 at 5). This is unpersuasive. For one thing, the June 2016 contract does not contain the word "Listly" or the word "Wexy." It describes the development of a website with both "purchase" features (like Listly and Craigslist.com) and "auction" features (like Wexy and eBay.com). Based on the descriptions of Listly and Wexy in the Plaintiff's own Complaint, it would not be inaccurate to call the June 2016 contract the "MMIE Wexy contract" rather than the "MMIE Listly contract." Moreover, if the "MMIE Wexy" contract incorporated by reference in the March 2017 and May 2017 contracts is *not* the June 2016 contract, that means that a mysterious fourth contract exists. Neither the Plaintiff nor the Defendants have directed the Court's attention to such a document.

Second, MMIE argues that "the same terms and conditions" language in the March 2017 and May 2017 contracts "'is not necessarily to say that all such terms and conditions will remain in effect." (Dkt. 32 at 6). The Court rejects this strained

reading of the March 2017 and May 2017 contracts. "[T]he *same* terms and conditions" means just what it says: the same terms and conditions. Not a limited subset of those terms and conditions, but the same terms and conditions. Under the "Terms and Conditions" heading of the June 2016 contract there is an arbitration clause, and that arbitration clause is incorporated by reference in the March 2017 and May 2017 contracts.

This means that the fraudulent inducement to contract and breach of contract claims against Synectic and Evans are within the scope of the arbitration clause. [5]

*2. Fraud, Conspiracy, and Unjust Enrichment*

MMIE argues that if the Court finds the arbitration clause is incorporated into the 2017 contracts, Counts II, IV, and V alleging fraud, conspiracy, and unjust enrichment still fall outside the scope of that arbitration clause because these claims do not "turn on the interpretation of any contract." (Dkt. 32 at 6–7). While the arbitration clause covers "[a]ny dispute arising under this Agreement," (Dkt. 23, Ex. A), MMIE contends that it does not cover claims that sound in tort. The Court is not persuaded. MMIE cites examples of arbitration agreements that *do* explicitly

---

[5] MMIE implicitly concedes that Counts I and III, which allege breach of contract and fraudulent inducement, fall under the scope of the arbitration agreement if that agreement is incorporated by reference in the March and May contracts. (Dkt. 32 at 6).

reference tort and statutory claims,[6] but MMIE does not cite any cases suggesting that this language is *required* if an arbitration agreement is to cover such claims.[7]

On the contrary, "the Seventh Circuit has repeatedly held that the language 'arising out of' and 'relating to' is extremely broad and creates a presumption of arbitrability that reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 891 (N.D. Ill. 2014) (requiring arbitration of "any and all disputes" including statutory claims and torts alleged to have occurred after termination of a contract) (quotations an citations omitted); *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033–34 (7th Cir. 2012) (conspiracy, unjust enrichment, and fraud claims were subject to arbitration because arbitration clause covered "any dispute arising out of this agreement"); *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (fraudulent inducement claims were within the scope of an arbitration agreement covering claims "arising under" a contract); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (arbitration clause with the language "arising

---

[6] These cases do not consider the applicability of an arbitration agreement to tort claims and are not otherwise germane to the issue before the Court. *See Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 597 (6th Cir. 2013) (addressing class-wide arbitration); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 805 (N.D. Ill. 1999) (considering unconscionability and mutuality of arbitration agreement); *Bahena v. Am. Voyager Indem. Ins. Co.*, No. 8:07 CV 1057-T 24 MSS, 2008 WL 780748 (M.D. Fla. Mar. 19, 2008) (discussing when third-party beneficiaries of contracts can be compelled to arbitrate).

[7] MMIE cites *Fazio v. Lehman Bros, Inc.*, 340 F.3d 386 (6th Cir. 2003), for the proposition that "[w]hen analyzing arbitrability, courts ask whether the claim(s) could proceed without reference to the contract or relationship at issue." (Dkt. 32 at 7). First, the tort claims here rely on the contractual relationship. In addition, *Fazio* instructed further that "*merely casting a complaint in tort does not mean that the arbitration provision does not apply*. Even real torts can be covered by arbitration clauses '[i]f the allegations underlying the claims touch matters covered by the agreement.'" *Fazio*, 340 F.3d at 395 (emphasis added, citations and quotations omitted).

out of or relating to" created a "presumption of arbitrability" that extended to claims of tortious interference).

After establishing "that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032–33 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) and *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)). Therefore, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quotations and citations omitted). Counts II, IV, and V are dismissed pursuant to Rule 12(b)(3) as to Synectic and Evans.

### B. McClintock's Motion

McClintock was not an employee of Synectics but rather a contractor,[8] and he was not a party to either the June 2016 contract (with its arbitration clause), or the March 2017 or May 2017 contracts (which incorporate the arbitration clause by reference). (Dkt. 23 at 1). He nevertheless seeks to enforce this arbitration agreement on a theory of equitable estoppel. (Dkt. 39 at 2). Equitable estoppel is one of the "five doctrines through which a non-signatory can be bound by arbitration agreements

---

[8] If McClintock were an employee rather than a contractor this argument would be squarely governed by *Dunmire v. Schneider*, 481 F.3d 465 (7th Cir. 2007). There, "[t]he Seventh Circuit [ ] held that a customer must arbitrate claims against both a company and its employees, even if the employees are not express parties to the arbitration agreement." *Mathys v. Hartford Gold Grp., LLC*, No. 20 C 3927, 2020 WL 7183744, at *3 (N.D. Ill. Dec. 7, 2020) (citing *Dunmire*, 481 F.3d at 467). The logic of this decision, which applies the "agency" exception from *Zurich*, is nevertheless relevant to this Court's application of the "estoppel" exception.

entered into by others [including]: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co.*, 417 F.3d at 687 (citing *Fyrnetics (H.K.) Ltd. v. Quantum Grp.*, Inc., 293 F.3d 1023, 1029 (7th Cir. 2002)). Under the doctrine of equitable estoppel, a non-signatory such as McClintock can compel arbitration under two circumstances: (1) "when the signatory references to or presumes the existence of a written agreement in asserting its claims against the non-signatory," and (2) "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889–90 (N.D. Ill. 2014) (citations and quotations omitted). Both circumstances are present here.

The claims against McClintock are fraudulent inducement, fraud, conspiracy, and unjust enrichment. (Dkt. 1 at 9–16). Each is considered in turn.

*1. Fraudulent Inducement*

MMIE's fraudulent inducement claim describes a range of alleged falsehoods that McClintock and Evans made to Simpson to convince MMIE to enter into the March 2017 and May 2017 contracts. (Dkt. 1, ¶ 74). The misrepresentations were made during meetings attended by all Defendants. (*Id*. at ¶¶ 69–70). The Complaint alleges "MMIE reasonably relied on these fraudulent misrepresentations" and was induced by them to enter into the March 2017 and May 2017 contracts. (*Id*. at ¶ 75). These allegations by a signatory clearly "reference[ ] to or presume[ ] the existence of a written agreement in asserting [ ] claims against the non-signatory." *Paragon*

*Micro, Inc.,* 22 F. Supp. 3d at 889–90. In addition, MMIE "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Paragon Micro, Inc.*, 22 F. Supp. 3d at 889–90. The doctrine of equitable estoppel is applicable under these circumstances. MMIE's fraudulent inducement claim against McClintock is subject to the arbitration agreement signed by MMIE and Synectics.

*2. Fraud*

MMIE's allegations in support of its fraud claim do not reference any of the three contracts, ruling out the first possible basis for equitable estoppel. (Dkt. 1, ¶¶ 78–102). But the fraud allegations describe "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Paragon Micro, Inc.*, 22 F. Supp. 3d at 889–90. For example, the Complaint says "Synectics, Defendant Evans, and Defendant McClintock made false statements of material fact to MMIE about the status, functionality, costs, and coding method of Wexy, Carz, and Jship." (*Id.* at ¶ 79). The Complaint also describes McClintock having represented that he acted on behalf of Synectics regarding the projects described in the relevant contracts between MMIE and Synectics.[9] (Dkt. 1, ¶¶ 99–101). Because McClintock's misrepresentations pertained to his role at Synectics and his involvement with the projects described in the March 2017 and May

---

[9] MMIE alleges that McClintock told Simpson "that he was an in-house employee of Synectics, that he worked in an office along with other Synectics employees, and that he and Synectics had done other projects in the Detroit area when in fact Defendant McClintock was an independent contractor who worked from home and the MMIE project was his first project with Synectics." (Dkt. 1, ¶ 99). McClintock also "misrepresented he would be the lead developer for the Wexy, Carz, and Jship projects when in fact he knew he would not be involved with" the majority of work on Wexy, Carz, and Jship. (Dkt. 1, ¶ 73).

2017 contracts, the allegations rely on "substantially interdependent and concerted misconduct" and equitable estoppel applies. MMIE's fraud claim against McClintock is subject to the arbitration clause.

### 3. Conspiracy

MMIE's conspiracy claim includes allegations that "Synectics, Defendant Evans, and Defendant McClintock, for the purpose of extracting money from MMIE, agreed to engage in and did engage in concerted action[s]" already enumerated above. (Dkt. 1, ¶ 111). There can be no conspiracy without an agreement, and these claims against McClintock and Synectics describe "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Paragon Micro, Inc.*, 22 F. Supp. 3d at 889–90. MMIE's conspiracy claim against McClintock are also subject to the arbitration clause signed by MMIE and Synectics.

### 4. Unjust Enrichment

Finally, MMIE's unjust enrichment claim against McClintock is also subject to the arbitration clause. It is alleged that "[b]eyond the *contracted for* $156,680, Synectics, Defendant Evans, and Defendant McClintock *together* received and continue to unjustly retain over $189,204 to MMIE's detriment." (Dkt. 1, ¶ 113, emphasis added). This is precisely the kind of claim that must be subjected to arbitration under the principles of equitable estoppel because it both relies on and references the contracts that include that arbitration clause, and involves

interdependent and concerted conduct by signatories and non-signatories together. *See Paragon Micro, Inc.*, 22 F. Supp. 3d at 889–90.

Having concluded that all of MMIE's claims against Synectics, Evans, and McClintock must be arbitrated, the Court need not reach the Defendants' 12(b)(6) motions to dismiss.

**IV. Conclusion**

For the stated reasons, Defendants' motions to dismiss for improper venue (Dkts. 22 and 25) are granted. Civil case terminated.

E N T E R:

Dated: June 28, 2021

MARY M. ROWLAND
United States District Judge